IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

LaKeisha Marie Caesar,                     )        Civil Action No. 8:12-cv-02397-RBH-JDA
                                           )
                          Plaintiff,       )
                                           )
            vs.                            )        **REPORT AND RECOMMENDATION**
                                           )        **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,[1]                      )
Commissioner of Social Security,           )
                                           )
                          Defendant.       )

        This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[2]  Plaintiff, proceeding pro

se, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial

review of a final decision of the Commissioner of Social Security ("the Commissioner"),

denying Plaintiff's claim for supplemental security income ("SSI")[3].  For the reasons set

forth below, it is recommended that the decision of the Commissioner be affirmed.

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[3]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

Plaintiff filed her current application for SSI in June 2008, alleging an onset of disability date of December 21, 2007.[4]  [ R. 140–42, 220–24.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 79–81, 100–07.]   on August 11, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") [R. 108–10], and on October 5, 2010, ALJ Frances W. Williams held a hearing on Plaintiffs claim.  [R. 42–71.]  The ALJ issued a decision on, October 22, 2010, finding Plaintiff not disabled under the Social Security Act ("the Act") since June 6, 2008, the date the application was filed.  [R. 19–41.]

At Step 1,[5] the ALJ found Plaintiff had not engaged in substantial gainful activity since June 6, 2008, the application date.  [R. 24, Finding 1.]  At Step 2, the ALJ found Plaintiff had the following severe: polyarthropathy, obesity, depression, and dependent personality.  [R. 24, Finding 2.]  At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 24, Finding 3.] Specifically, the ALJ concluded Plaintiff's mental impairments, singly or in combination, did not medically equal the criteria of Listings 12.04 and 12.08.  [R. 29–30.]

---

[4] Plaintiff previously filed an application for disability insurance benefits ("DIB") on June 24, 2004 and an application for SSI on May 5, 2004, alleging an onset of disability date of October 31, 2000.  [*See* R. 22.]  The claims was denied initially and were not pursued.  [*See id.*]  Plaintiff filed another application for SSI on February 22, 2007, alleging disability beginning October 31, 2000.  [*See id.*]  That claim was denied initially and on reconsideration and was not pursued.  [*See id.*]

[5] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work as defined in 20 CFR 416.967(a) except no lifting and/or carrying over 10 pounds occasionally and less than 10 pounds frequently; no standing and/or walking over 2 hours in an 8-hour workday; only occasional "handling" with the right upper extremity; only occasional use of controls with the right lower extremity or the right upper extremity; and limited to unskilled jobs with no requirement to make complex or detailed decisions with only occasional interaction with the public.

[R. 30, Finding 4.]  Plaintiff had no past relevant work [R. 32, Finding 5]; however, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform [R. 32, Finding 9].  Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, since June 6, 2008.  [R. 33, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. 1–5.]   Plaintiff filed this action for judicial review on August 20, 2012. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff, proceeding pro se, contends the following errors require reversal:

1.    The ALJ's decision "violates the attending physician rule as it exists in the Fourth Circuit" [Doc. 45 at 2–4]; and

2.    The ALJ failed to properly evaluate Plaintiff's subjective complaints of pain under Fourth Circuit case law [*id*. at 4–6.]

The Commissioner, on the other hand, contends the decision is supported by substantial evidence, specifically arguing

1.    The ALJ properly weighed the opinion evidence in the record [Doc. 47 at 15–17]; and

2.    The ALJ properly evaluated Plaintiffs credibility [*id.* at 17–20.]

## **STANDARD OF REVIEW**

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).   Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520.   Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21.   The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).   A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).   Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21

5

F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v.*

*Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[6]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[6]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).    The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.    20 C.F.R. § 416.920.    Through the fourth step, the burden of production and proof is on the claimant.    *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).    The claimant must prove disability on or before the last day of her insured status to receive disability benefits.    *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).    If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.    *Grant*, 699 F.2d at 191.    If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.    20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

9

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the

10

impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[7]    20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[8] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. § 416.920(f)–(g);

---

[7]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[8]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a).

*Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[9]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.   In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").   The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."   *Walker*, 889 F.2d at 50.   For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in

---

[9]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3)

13

supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

IV.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

15

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

16

of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

17

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weight Assigned to Treating Physician Opinions**

As stated above, Plaintiff argues the ALJ's decision violated the attending physician rule.  [Doc. 45 at 2.]  Without pointing to any specific application of error by the ALJ or even pointing to which physician's opinion was improperly evaluated, Plaintiff contends that the "evidence presented by the claimant's treating physician is susceptible of only one reasonable inference: that the claimant is disabled within the meaning of the Social Security Act."  [*Id.* at 4.]

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."  *Id.* (quoting *Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or

18

inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

19

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

### *Brief Medical History*

In November 2003, Plaintiff presented to a podiatrist, Dr. Emanuel Willis ("Dr. Willis"), complaining of bilateral foot pain and, upon examination, showed decreased range of motion in the right ankle and tenderness on palpitation along the tibialis posterior tendon. [R. 296.] She was sent to Advance Care for "Ritchie type braces of both lower extremities" and was asked to follow up with Dr. Wilis in six to eight weeks. [Id.] There is no evidence in the record that she followed this instruction.

In February 2007, Plaintiff presented to Dr. Ugo Okereke ("Dr. Okereke") of Cedars Medical Clinic, complaining of increasing joint pain in both knees, ankles, and feet [R. 400–01.] Upon examination, Dr. Okereke noted bilateral tenderness and crepitation in the knees, with restricted range of motion, but no pain or other abnormalities in Plaintiff's feet, legs, or ankles. [*Id*.] In October 2007, physician's assistant Julie West examined Plaintiff and made essentially the same clinical findings, but noted that Plaintiff's right leg/ankle was tender on palpation and painful on eversion and inversion. [R. 398–99.]

In March 2007, Plaintiff contacted Santee Wateree Mental Health Center ("SWMHC") by telephone and reported "feeling stressed out" and "having suicidal thoughts" but no plan. [R. 532.]    In an initial clinical assessment, Dr. Jacqueline Francis ("Dr. Francis") diagnosed Plaintiff with Major Depressive Disorder, Single Episode, Moderate

20

and alcohol dependence, and assessed a Global Assessment of Functioning ("GAF") score of 55. [R. 531.] During a follow-up visit in April 2007, Plaintiff reported a slight improvement in her mood and sleep, and denied any suicidal ideation. [R. 521.] In September 2007, Plaintiff's patient file was closed because she failed to respond to requests for contact. [R. 515–16.]

In July 2008, Plaintiff presented to rheumatologist Dr. Supen Patel ("Dr. Patel"), complaining of pain in both feet, as well as her neck and right wrist. [R. 444–45.] Dr. Patel noted "[n]o active inflammatory changes" in Plaintiff's ankles; very limited flexion and extension in her right wrist; and mild tenderness with good range of motion in her left wrist. [R. 444.] He diagnosed her with "mild [osteoarthritis] type symptoms with some muscle spasms." [*Id.*]

In November 2008, Plaintiff again presented to SWMHC complaining of depression, loss of appetite, crying spells, isolation, and not wanting to get out of bed. [R. 507.] Plaintiff reported that she had been using alcohol and marijuana to self-medicate, but was able to take care of herself and her six children. [R. 509, 512.] Plaintiff's mental status examination changed little from her March 2007 visit with Dr. Francis, and the clinician also assessed Plaintiff with better judgment and a higher fund of knowledge than Dr. Francis had previously assessed. [R. 512–13.]

In March 2009, Dr. Patel assessed Plaintiff with polyarthralgias but noted that Plaintiff had tested negative for rheumatism. [R. 578.] He ordered X-rays of Plaintiff's hands, feet, and knees, but did not note any significant abnormalities. [R. 579.] In August 2009, Dr. Patel noted that Plaintiff's condition had improved with Prednisone treatment. [R. 581.] In December 2009, Dr. Patel noted that Plaintiff had "a good response to the

medication," her "arthritis ha[d] improved," and her "[s]welling seem[ed] to be down pretty good." [R. 583.]

In July 2010, Plaintiff returned to SWMHC complaining that she "still gets depressed sometimes." [R. 586.] She reported occasional alcohol and marijuana use. [R. 586.] She was diagnosed with bipolar disorder and alcohol dependence. [R. 587.] In August 2010, Plaintiff reported that her anger was "getting a lot better" and that she was "not as depressed." [R. 589.] The record also notes that her mental status improved significantly and Plaintiff was encouraged to reconnect with a positive support system. [R. 589–90.]

### Treating Physicians' Opinions[10]

#### Dr. Okereke

Dr. Okereke saw Plaintiff on February 7, 2007 as a new patient for complaints of pain and cramping in both legs. [R. 400.] Upon evaluation, Dr. Okereke found Plaintiff had joint stiffness and joint swelling, but was in no distress with normal mood and affect. [*Id.*] On March 29, 2007, Dr. Okereke wrote a letter stating,

> Ms. C[ae]ser is an unfortunate 24 year old female with chronic bilateral knee, ankle, and feet pain. The patient has been referred to Social Security to apply for disability as she is unable to work due to her pain.
>
> Please kindly use your good office to be of assistance to our patient. Please feel free to call with any questions or concerns.

[R. 363.]

When considering Dr. Okereke's opinion, the ALJ noted,

---

[10]As previously stated, Plaintiff fails to specify which treating physician's opinion was improperly evaluated. As Plaintiff is proceeding pro se, out of an abundance of caution, the Court will consider the weight the ALJ gave to the treating physicians of record.

> A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitle[d] to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight. Social Security Ruling 96-2P. However, there is no evidence of a longitudinal record of treatment with Dr. Okereke as the evidence shows that he treated her on one occasion, no[t] long enough to establish a doctor/patient relationship. Further, this physician's opinion is not binding because he is not a "physician designated by the Commissioner" and in giving controlling weight to his opinion would, in effect, give him the authority to decide the issue of disability, an issue which is reserved to the Commissioner. Social Security Ruling 96-5p.

[R. 25–26.]

Upon consideration, the Court finds no error in the ALJ's treatment of Dr. Okereke's opinion. First, because Dr. Okereke's treatment of Plaintiff, confirmed by only one visit, does not rise to the level of a "treating source" opinion, it is not entitled to receive controlling weight. Additionally, Dr. Okereke's opinion is not supported by the limited treatment notes provided from Cedars Medical Clinic or by any other medical opinion of record. Lastly, opinions that a claimant is disabled or unable to work are reserved to the Commissioner and are not considered medical opinions. 20 C.F.R. § 404.1527(d). Pursuant to the regulations, the Commissioner will not give any special significance to the source of an opinion on an issue reserved to the Commissioner. [*Id.*] Accordingly, the Court finds the ALJ's weighing of Dr. Okereke's opinion is supported by substantial evidence.

Dr. Patel

Plaintiff was seen by Dr. Patel on referral from Dr. Okereke for a consultation for arthritis. [R. 444, 450.] At the time, Plaintiff was six months pregnant, and her complaints

were related to bilateral feet pain of the ankles with pain in the bottoms of her feet, neck and her right wrist.  [R. 444.]  Dr. Patel noted "[h]er right wrist has significant inflammatory process noted."  [*Id.*]  He decided not to put her on anything until he received results from blood work.  [*Id.*]

Dr. Patel saw Plaintiff again on March 19, 2009, six months postpartum, and assessed Plaintiff with "polyarthralgias, questionably inflammatory origin."  [R. 578.] Plaintiff claimed she was having more pain and stiffness, and that she had pain in her ankles, knees, small joints of the hands, and wrists, with decreased range of motion and with flexion and extension. [*Id.*]   The treatment notes indicate that previous tests for rheumatoid factor were negative.  [*Id.*]  Dr. Patel ordered x-rays on both hands and feet to look for erosions and scheduled to see her back in two months.  [*Id.*]

Dr. Patel saw Plaintiff on May 28, 2009 and assessed "polyarthralgias, inflammatory polyarthritis."   [R. 580.]   Dr. Patel prescribed Prednisone, Ultram for pain, and iron supplements for Plaintiff's anemia.  [*Id.*]  In August 2009, Dr. Patel assessed Plaintiff with "Rheumatoid arthritis, osteoarthritis," which he described as "active disease, although improved with Prednisone."  [R. 581.]  Methotrexate was also prescribed.  [*Id.*]  At a September 30, 2009 visit, Dr. Patel indicated that Plaintiff was "some better" but still having some pain and discomfort.  [R. 582.]  Treatment notes from December 31, 2009 indicate that "[a]t this time, she is doing reasonably well.  Her arthritis has improved.  She still has minimal stiffness for about thirty to forty minutes in the morning.  Swelling seems to be down pretty good."  [R. 583.]

24

In May 2010, Dr. Patel completed a Medical Release/Physician's Statement indicating that Plaintiff's disability was not permanent but was expected to last twelve months.  [R. 585.]  Dr. Patel also indicated that Plaintiff was unable to work or participate in activities to prepare for work.  [*Id.*]  With respect to activity restrictions, Dr. Patel limited Plaintiff's sitting, standing, walking, and keyboarding to a maximum of two hours per day; and climbing, kneeling/squatting, bending/stooping, pushing/pulling, and lifting/carrying to less than two hours per day.  [*Id.*]  He likewise limited Plaintiff to lifting no more than 5 pounds for more than one hour per day due to hand swelling.  [*Id.*]

The ALJ, considering the restrictions provided in Dr. Patel's Physician Statement, assigned little weight to this opinion, indicating

> The longitudinal treatment history does not support the limitations as stated by Dr. Patel.  The evidence shows that the claimant received essentially no treatment and reported no pain complaints while she was pregnant with her children in 2007 and 2008.  In addition, the claimant indicated that she lived alone with five of her six children and there is no evidence that she required any help in caring for her family.

[R. 28.]

Upon review, the Court notes that the ALJ properly assessed Dr. Patel's medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c) and give specific reasons for the weight given to Dr. Patel's opinion.  Accordingly, the Court can not say that the ALJ's conclusion is not supported by substantial evidence.

**Credibility Determination**

25

Plaintiff argues the ALJ failed to properly assess Plaintiff's credibility in accordance with Fourth Circuit law, resulting in a "conclusory disposal of subjective allegations of pain and conditions capable of producing pain." [Doc. 45 at 4.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions"). In evaluating the intensity and persistence of the claimant's pain, the ALJ should consider evidence other than the claimant's complaints, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain; (5) treatment, other than medication, the claimant receives or has received for relief of the pain; (6) any measures the claimant uses or has used to relieve the pain; and (7) any other factors concerning the claimant's functional limitations and restrictions due to the pain. 20 C.F.R. § 404.1529(c)(3). Moreover, to "determin[e] the extent to which . . . symptoms, such as pain, affect [the Plaintiff's] capacity to perform basic work activities," the ALJ is to "consider whether there are any

26

inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence," which includes medical and other evidence. *Id.* § 404.1529(c)(4); *see also, e.g.*, *Craig*, 76 F.3d at 595 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.").

In this case, the ALJ accepted that Plaintiff's impairments could reasonably have been expected to cause some of her alleged symptoms but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. [R. 31.] The ALJ explained the basis for his determination as follows:

> In terms of the claimant's alleged disability due to the claimant's anemia, the evidence does not show that her anemia has resulted in persistence of hematocrit of 30% or less despite prescribed therapy and requiring one or more blood transfusion on an average of at least once every 2 months, as required to meet section 7.02 of the Listing of Impairments of any other impairment in the listings.
>
> Although the claimant testified that she had rheumatoid arthritis, there are no laboratory test results confirming a diagnosis of rheumatoid arthritis. While the evidence does show that the claimant has polyarthralgias, it has not resulted in a history of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in an inability to ambulate effectively or inability to perform fine and gross movement effectively.

27

Although the evidence does show a history of pes planus diagnosed in 2003, there is no evidence suggesting that the claimant undergo surgery. In addition, the evidence indicates that the claimant was prescribed lifts for her shoes and braces (Exhibit 1F) there is no evidence to show that the claimant followed through on the recommended treatment.

The evidence further shows that the claimant has continued to abuse alcohol and marijuana, but the claimant testified that she did not feel she had a problem with them and that she did not think that they had any effect on her ability to function.

Although the claimant testified that she experienced significant and constant pain, there have been no frequent emergency room visits, no intensive inpatient or outpatient hospital visits, no surgical intervention, no referral to a surgeon, and no reported atrophy or changes in weight which are reliable indicators of longstanding, severe, or intense pain. There is a lack of reports from any treating or examining source that the claimant's impairments are actually debilitating to the point of precluding substantial gainful activity other than previous discussed.

[R. 31.]

Upon review, the Court finds that the ALJ conducted a proper analysis in determining the credibility of Plaintiff's subjective complaints, fully explaining his decision and citing relevant evidence. For example, when determining that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Plaintiff's subjective complaints in conjunction with her ability to perform activities of daily living and found Plaintiff was able to perform a wide array of activities despite her impairments, such as take care of her five children, ranging in age from 1 to 10, make beds, do laundry, and wash dishes. [R. 29.] Further, the ALJ explained that, on examination by mental health practitioner Dr. Ritz in November 2008, it was noted that Plaintiff "could benefit from mental health treatment and an assessment

28

as to anti-depressant medication but that she had the capabilities of handling her day-to-day activities and there has not been deterioration of personal habits based on depressive factors." [R. 27.] On a subsequent mental status exam in June 2009, Dr. Katherine Kelly noted that "[t]he claimant's judgment and insight were within normal limits; she appeared capable of managing her financial affairs; she was a fair historian and appeared to have average intelligence. Her expressive and receptive languages were within normal limits and her stream of thought was focused on her pain and physical condition." [R. 27.] Ultimately, the ALJ found that the "objective findings and treatment notes of the claimant's treating and examining sources are consistent with the residual functional capacity limitations described above, as are the credible findings relating to any subjective symptoms. Her impairments do not preclude all work." [R. 32.] The Court finds that Plaintiff has failed to articulate any basis that would support a finding that the ALJ's credibility determination is not supported by substantial evidence. To the contrary, the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding regarding Plaintiff's credibility; thus, the court must uphold the ALJ's determination.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 12, 2014
Greenville, South Carolina

29